**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | |
|---|---|
| LISA LESLIE, individually, and on behalf of FREDRICK RAYMOND LESLIE, JR., deceased,<br><br>        Plaintiff,<br><br>vs.<br><br>CENTURION OF MISSOURI, LLC; RUANNE STAMPS, M.D., Individually as a Medical Services Provider at Centurion; AND BOBBY WILLIAMS, Individually as Corrections Officer at Tipton Correctional Center,<br><br>        Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 2:26-cv-4086<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF LISA LESLIE'S COMPLAINT

Plaintiff Lisa Leslie ("Lisa" of "Plaintiff"), individually, and on behalf of Fredrick Raymond Leslie, Jr. ("Mr. Leslie" or "Decedent"), deceased, by and through counsel, and for her claims alleges and states as follows:

## PRELIMINARY STATEMENT

1. On July 23, 2024, Mr. Leslie, an inmate at Tipton Correctional Center ("TCC"), died at Capital Region Medical Center in Jefferson City, Missouri, from a perforated colon. He was 60 years old.

2. Over the last months of Mr. Leslie's life, he suffered from a debilitating medical condition that was so obvious, even a layperson would easily recognize the necessity for a doctor's attention. The institutions responsible for his care—namely, TCC and TCC's healthcare provider, Centurion of Missouri, LLC ("Centurion")—failed to take meaningful action.

3. For approximately six months, Mr. Leslie reported escalating gastrointestinal symptoms that any reasonable provider would recognize as requiring emergency medical intervention. Mr. Leslie was in considerable pain and agony due to his worsening gastrointestinal symptoms, including severe stomach pain, loss of appetite, nausea, weight loss, bloating, vomiting, and painful defecation. Yet TCC staff and Centurion consistently denied him timely and appropriate medical treatment.

4. Despite repeated and urgent pleas from Mr. Leslie, his family, and fellow inmates, Defendants took no meaningful action as his condition visibly worsened.

5. For months, Centurion did not have an on-site physician at TCC. Yet, Defendants repeatedly denied Mr. Leslie's pleas to go to the hospital on the basis that he lacked physician approval. On the evening of July 21, 2023, Mr. Leslie begged for medical care for the final time.

6. Defendants again ignored his pleas. The following morning, Mr. Leslie was found unconscious in front of the desk of Correctional Officer Bobby Williams, who was asleep at his post. Only then was Mr. Leslie transported to the hospital.

7. Upon his arrival, he received tests and blood work that showed he had a bowel perforation—a life-threatening medical emergency occurring when a hole or tear develops in the wall of the small or large intestine, allowing bacteria and waste to leak into the abdominal cavity. Mr. Leslie was subsequently rushed into surgery to repair the perforation, but it was unfortunately too late. His condition had deteriorated beyond repair, and life-saving intervention was no longer possible.

8. Under the Eighth Amendment of the United States Constitution, Defendants are prohibited from subjecting inmates in their care to cruel and unusual punishment through deliberate indifference. Upon information and belief, Defendants failed to uphold this

constitutional mandate by disregarding Mr. Leslie's urgent and obvious medical needs, causing him needless pain and suffering that ultimately led to his preventable and untimely death.

9. Mr. Leslie spent his final months suffering unbearable pain, while Centurion, Centurion staff, and TCC staff repeatedly deprived him of life-saving medical care.

## JURISDICTION AND VENUE

10. During Mr. Leslie's time at TCC, Defendants continuously violated Mr. Leslie's constitutional rights under 42 U.S.C. § 1983. Consequently, this Court has subject matter jurisdiction over the federal questions implicated pursuant to 28 U.S.C. § 1331, and civil rights cases pursuant to 28 U.S.C. § 1343, as well as supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

11. Missouri law gives Plaintiff Lisa Leslie ("Plaintiff" or "Mrs. Leslie") standing as an individual to assert an action for personal injuries to her son, Mr. Leslie, resulting in his death. Mrs. Leslie has standing to bring this 42 U.S.C. § 1983 action by virtue of Mo. Rev. Stat. § 537.080.

12. This cause of action arose as a result of the wrongful death of Decedent Fredrick Raymond Leslie, Jr., which occurred in Jefferson City, Cole County, Missouri, after months of unconstitutional disregard for Decedent's worsening medical condition in Tipton, Moniteau County, Missouri. Thus, pursuant to 28 U.S.C. § 1391, venue of this action properly lies in the United States District Court for the Western District of Missouri, Central Division, because Defendants reside in the judicial district and all the events or omissions giving rise to Decedent's claims occurred within the district.

## PARTIES

13. Plaintiff Lisa Leslie is a citizen of Missouri and is the natural parent of Decedent Fredrick Raymond Leslie, Jr. At all relevant times, Decedent was an inmate at TCC, a minimum security facility in Tipton, Moniteau County, Missouri.

14. Pursuant to Mo. Rev. Stat. § 537.080.1(1), Mrs. Leslie is an appropriate legal representative to bring this action for wrongful death and violation of Mr. Leslie's constitutional rights, and to vindicate violation of her own rights.

15. Defendant Centurion of Missouri, LLC (hereinafter "Centurion"), is a duly licensed healthcare provider in the State of Missouri and is in the business of providing healthcare services in exchange for valuable consideration paid. Defendant Centurion is a limited liability company existing under the laws of Missouri with its principal place of business in Missouri. Upon information and belief, Defendant Centurion provides healthcare services at MDOC facilities, including TCC, pursuant to a contract. According to their website, Centurion believes "Incarcerated persons must be afforded access to medical, dental, and mental health services provided by qualified healthcare professionals and services are held to similar standards as healthcare services in the community." (*See Frequently Asked Questions, What Services are provided in correctional healthcare?* CENTURION, https://teamcenturion.com/correctional-care-solutions/correctional-healthcare/ (last accessed April 20, 2026)). However, from August 2023 to his death on July 23, 2024, Centurion failed to sufficiently employ either a qualified healthcare professional or any healthcare professional at TCC.

16. Defendant Ruanne Stamps, M.D., was at all relevant times to this action a current or former employee and agent of Centurion. At all relevant times, Defendant Stamps was a medical

doctor and was part of the medical team responsible for treating Mr. Leslie at TCC, until she was fired in late 2023 or early 2024. She is sued in her individual capacity.

17.     Defendant Bobby Williams was at all times relevant to this action a correctional officer at TCC. He is sued in his individual capacity. Upon information and belief, Mr. Williams was asleep at his post on the evening of July 22, 2024, when Mr. Leslie sought help from him for the last time before he ultimately passed from his bowel perforation.

### ALLEGATIONS COMMON TO ALL COUNTS

18.     Plaintiff hereby incorporates by reference the allegations in each preceding paragraph as if each were set forth fully herein.

19.     Mr. Leslie was an inmate at TCC beginning in or around December of 2022.

20.     In or around August 2023, Mr. Leslie had his first serious bout of gastrointestinal illness.

21.     During this period, Mr. Leslie vomited constantly, was in continuous pain, and could not eat without exacerbating his nausea and pain.

22.     Mr. Leslie was so sick that he barely left his bed. He was pale and white, and he could not eat without feeling worse.

23.     After complaining to a corrections officer, Mr. Leslie was seen by Defendant Dr. Stamps, a Centurion employee working on-site at TCC. Dr. Stamps referred Mr. Leslie to a doctor outside of TCC.

24.     Despite this medical referral, Mr. Leslie was never taken to an outside doctor. Further, Dr. Stamps never followed up to ensure that Mr. Leslie was taken for medical treatment.

25. Mr. Leslie recovered from this bout of illness to a degree but had lingering symptoms. Mr. Leslie avoided most of the cafeteria food because it would cause a relapse in symptoms.

26. Dr. Stamps employment with Centurion was terminated in late 2023 or early 2024.

27. There was no doctor on staff at TCC during the subsequent eight months, including the period of Mr. Leslie's worsening condition and ultimate death.

28. Eventually, TCC and Centurion set up telehealth calls with sick inmates. However, telehealth visits would not allow for medications as there was no doctor to write a prescription.

29. In or around February 2024, Mr. Leslie started getting sick again with symptoms becoming more serious each week.

30. He suffered from intense headaches, which would keep him in bed for three to four days at a time and increasingly debilitating gastrointestinal issues. This continued for months.

31. The last month of Mr. Leslie's life was marked by abject pain.

32. Mr. Leslie spent most days vomiting and defecating liquid. Mr. Leslie often could not make it to the bathroom in time, and he would vomit into a trash can until it was full and would sometimes soil his sheets. In addition, Mr. Leslie would vomit fecal matter—a horrific symptom of his condition.

33. As Mr. Leslie worsened, he soiled his sheets more frequently from nonstop vomiting and diarrhea. Instead of giving Mr. Leslie the medical help he so obviously needed, upon information and belief, he was given a bottle of bleach so he could clean up after himself.

34. Mr. Leslie's reported symptoms were corroborated by his deteriorating physical appearance. Mr. Leslie, who had always been considered thin, became emaciated from the months of low appetite that resulted from his worsening abdominal pain. Mr. Leslie's gaunt frame was

6

only offset by his increasingly distended abdomen. As a result, his fellow inmates as well as his family described him as appearing pregnant. Others commented that Mr. Leslie was pale as a ghost.

35. Beginning in late June or early July 2024, until his death, Mr. Leslie would present himself to the TCC staff and request to be seen by the medical team.

36. Every day after Mr. Leslie requested to be seen by a member of the medical team, TCC staff sent him to the medical unit, where Centurion staff consistently told him they were waiting for an outside doctor's appointment for him.

37. Mr. Leslie was finally moved to the intensive care unit of TCC.

38. Tragically, and despite Mr. Leslie's obvious physical deterioration, a TCC sergeant, Defendant John Doe, ordered Mr. Leslie to pack up his things and return to his housing unit. The sergeant threatened to send Mr. Leslie to solitary confinement if he did not comply. Mr. Leslie painfully complied and returned to his housing unit.

39. Around this time, Mr. Leslie began using a cane to walk because he was unable to stand upright due to his severe abdominal pain.

40. Mr. Leslie continued to present to medical because of his worsening symptoms. No staff member, whether from TCC or Centurion, helped Mr. Leslie. Instead of providing medical treatment, Mr. Leslie's visits to medical resulted only in claims that Centurion staff were waiting for an outside doctor's appointment for Mr. Leslie.

41. On July 22, 2024, TCC Correctional Officer Bobby Williams was working at the desk charged with overseeing Mr. Leslie's housing unit that morning.

42. At some point—either late in the evening of July 21st, or in the early hours of July 22nd—Mr. Leslie approached Defendant Williams to get help as he was very sick.

7

43. On the morning of July 22, 2024, Mr. Leslie was found passed out in front of the desk, where Defendant Williams was sitting asleep. Defendant Williams was known for sleeping at his desk.

44. That day, Mr. Leslie was finally transported to the Capital Regional Medical Center ("CRMC") in Jefferson City for emergent medical care.

45. Mr. Leslie was conscious and lucid at the hospital, able to describe his severe abdominal pain, and to convey that he had not had a bowel movement in about five days.

46. The assessment note from the hospital noted that Mr. Leslie had "massive free air and free fluid on his imaging c/w [consistent with] perforated viscus possibly secondary to bowel ischemia."

47. The attending physician, Dr. Beverly Wilhelm-Oney, noted that these findings were "consistent with ischemic colon perforation," a life-threatening medical condition requiring immediate medical intervention.

48. As a result, the medical staff planned an "urgent exploratory laparotomy with bowel resection and ostomy with abdominal washout." This meant the medical staff planned to remove the perforated portion of his bowel, fit Mr. Leslie with an ostomy bag, and clean his abdomen of liquid stool.

49. They explained to Mr. Leslie that the procedure was "high risk for complications of surgery including pulmonary/cardiovascular/neurologic complication or even death."

50. During the surgery, Mr. Leslie's blood pressure dropped and a pulse was not obtainable. A "code blue" was called and required chest compressions for four minutes. Once a pulse was regained, the medical team at CRMC resumed the emergency surgery.

8

51. Following the procedure, Mr. Leslie was admitted directly to the ICU and placed on ventilatory support.

52. Early the next morning, Mr. Leslie suffered from cardiac arrest. He was pronounced dead at 7:19 AM on July 23, 2024.

53. The autopsy report listed Mr. Leslie's cause of death as a perforated colon.

<u>COUNT I</u>
<u>SECTION 1983: UNCONSTITUTIONAL POLICIES AND CUSTOMS, AND FAILURE TO TRAIN OR SUPERVISE IN VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION</u>
**Against Defendant Centurion**

54. Plaintiff hereby incorporates by reference the allegations in each preceding paragraph as if each were set forth fully herein.

55. Upon information and belief, MDOC has contracted with Centurion to provide health care services for inmates at the MDOC.

56. Centurion's policies, procedures, customs, practices, and actions – which, through the conduct and deliberate omissions of its employees and agents, including but not limited to Dr. Stamps, were so widespread and persistent as to represent official policy: recklessly disregarded substantial risks of serious harm to inmates and inflicted injuries that are actionable under 42 U.S.C. § 1983.

57. Further, Centurion's policies, procedures, customs, practices, and actions, including its failure to provide adequate staffing—or any staffing—to TCC was so widespread and persistent as to be reckless disregard the substantial risks of serious harm to inmates and inflicted injuries that are actionable under 42 U.S.C. § 1983.

58. Centurion and MDOC's collective abdication of policy-making and oversight responsibilities and/or its inadequate policies, procedures, customs, practices, and actions – as well

as its inadequate training, supervision, direction, and control that, if effective, would have eliminated those systemic deficiencies – reached the level of deliberate indifference and resulted in a constitutional injury manifesting itself in the unnecessary and wanton infliction of pain because of their collective and tacit authorization of personnel misconduct.

59. Centurion maintained unconstitutional policies and customs, and failed to train or supervise its employees in violation of the Eighth Amendment to the Unites States Constitution as follows:

a. By failing to have policies and procedures in place to ensure inmates, such as Mr. Leslie, are properly assessed, evaluated, and treated;

b. By having policies and procedures in place that would permit months to pass without a doctor staffing TCC in person;

c. By having policies and procedures in place such that a nurse was unable to escalate the need for outside medical care when a doctor was not on staff for months; and

d. By failing to train staff such that they could care for inmates when a doctor was unavailable, or to know when and how to escalate the need for a more learned diagnosis when the inmate's condition is beyond their knowledge base.

e. Failures to provide professional medical judgment and care that would be ordered or required by outside treating medical providers;

f. Delays or non-responses to urgent medical conditions;

g. Failure to assure timely access to care;

h. By failing to train staff such that they could identify a medical emergency requiring immediate medical attention.

60. As a direct and proximate result of Centurion's aforementioned unconstitutional policies and customs, and failure to train or supervise its employees, Mr. Leslie was injured and caused to suffer tremendous pain until his—avoidable—death on July 23, 2024.

<u>COUNT II</u>
<u>SECTION 1983: DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED IN VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION</u>
**Against Defendants Stamps and Williams (the "Individual Defendants")**

61. Plaintiff hereby incorporates by reference the allegations in each preceding paragraph as if each were set forth fully herein.

62. Throughout his final months of life while incarcerated at TCC, Mr. Leslie suffered from a serious medical condition, which ultimately killed him.

63. The Individual Defendants were each made aware of Mr. Leslie's serious medical symptoms through multiple channels, including but not limited to Mr. Leslie's repeated verbal requests for medical assistance to correctional officers and medical staff, written requests to medical personnel, and visibly deteriorating physical state.

64. Each of the Individual Defendants, while acting under color of law as employees of or contractors for MDOC, deliberately disregarded Mr. Leslie's severe gastrointestinal symptoms, including but not limited to, deliberately disregarding his obvious need for additional medical treatment and urgent referral to an outside physician for a timely diagnosis and other appropriate medical care.

65. Each of the Individual Defendants, while acting under color of law as employees of or contractors for MDOC, consciously disregarded Plaintiff's serious medical needs by failing to provide the medical care or direct that the medical care be provided or allow Plaintiff to obtain the medical care needed within a reasonable time.

66. As a direct result of the Individual Defendants' deliberate indifference, Mr. Leslie suffered serious, and eventually fatal, injury.

67. The Individual Defendants' acts and omissions were not only intentionally willful, wanton, reckless, and malicious but they also evince a complete and deliberate indifference to and a conscious and reckless disregard of the rights of Mr. Leslie. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient to punish Defendants or to deter Defendants and others from like conduct in the future.

68. Plaintiff is entitled to recover her reasonable attorney fees, costs, and expenses from Individual Defendants as provided by 42 U.S.C. § 1988.

<u>**COUNT III**</u>
**WRONGFUL DEATH – MEDICAL NEGLIGENCE**
**Against Centurion and Stamps ("Centurion Defendants")**

69. Plaintiff hereby incorporates by reference the allegations in each preceding paragraph as if each were set forth fully herein.

70. Mr. Leslie was in the care custody and control of Defendants Centurion and Stamps during his incarceration at TCC until he was finally taken to the hospital on July 22, 2024.

71. The Centurion Defendants had a duty to use reasonable care in providing medical treatment to inmates and patients at TCC, specifically Mr. Leslie, while he was incarcerated at TCC.

72. The Centurion Defendants acted with reckless or callous indifference and conscious disregard for Mr. Leslie's condition.

73. The Centurion Defendants breached their duty to Mr. Leslie and were negligent and careless in the following respects:

a. By failing to provide a timely, adequate, and complete assessment, evaluation, and management of Mr. Leslie;

Case 2:26-cv-04086-RK    Document 1    Filed 04/23/26    Page 12 of 16

b.      By failing to properly diagnose Mr. Leslie;

c.      By denying Mr. Leslie access to medical treatment;

d.      By failing to properly monitor Mr. Leslie's condition;

e.      By failing to observe Mr. Leslie's obvious symptoms;

f.      By failing to have policies and procedures in place to ensure inmates, such as Mr. Leslie, are properly assessed, evaluated, and managed;

g.      By having policies and procedures in place that would permit months to pass without a doctor staffing TCC in person;

h.      By having policies and procedures in place such that a nurse was unable to escalate the need for outside medical care when a doctor was not on staff for months; and

i.      By failing to train staff such that they could care for inmates when a doctor was unavailable, or to know when and how to escalate the need for a more learned diagnosis when the inmate's condition is beyond their knowledge base.

j.      By failing to provide professional medical judgment and care that would be ordered or required by outside treating medical providers;

k.      By delaying or non-responsiveness to urgent medical conditions;

l.      By failing to assure timely access to care;

m.      By failing to train staff such that they could identify a medical emergency requiring immediate medical attention.

74.      As a direct and proximate result of the aforementioned negligence and breach of care by the Centurion Defendants, Mr. Leslie was injured and caused to suffer tremendous pain until his death on July 23, 2024.

75. That by reason of the foregoing, Plaintiff is entitled to recover fair and reasonable damages against the Centurion Defendants as provided for in Mo. Rev. Stat. § 537.080, for the wrongful injuries to and the wrongful death of Mr. Leslie, including special damages for his funeral and burial, and pursuant to Mo. Rev. Stat. § 537.090 in the form of Mr. Leslie's future earnings.

76. The Centurion Defendants' negligence caused Plaintiff to suffer the loss of Mr. Leslie's companionship, comfort, instruction, guidance, counsel, and support, all of which caused and continues to cause emotional distress for the death of her son.

77. All of the aforementioned actions demonstrate that the Centurion Defendants acted without just cause or acted with a deliberate and flagrant disregard for the rights of Mr. Leslie, warranting an aware of punitive damages in an amount sufficient to punish them and deter them and others from future constitutional violations.

## INJURIES AND DAMAGES

78. Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraph as if each were set forth herein.

79. As a direct and proximate result of the negligent actions of the Defendants, Mr. Leslie suffered personal injury, pain and suffering, and mental anguish prior to his death. As a direct result of the negligent actions of the Defendants, Mr. Leslie suffered a poor quality of life in the months preceding his death. Defendants' negligence and deliberate indifference directly contributed to the personal injury, pain and suffering, mental anguish, and death experienced by Mr. Leslie.

80. As a direct and proximate result of the Defendants' negligence and deliberate indifference, Plaintiff and the rest of Mr. Leslie's family were deprived of Mr. Leslie's valuable services, companionship, comfort, consortium, guidance, support, familial love, and affection.

Additionally, Mr. Leslie suffered great physical pain and mental anguish through the time period of the Defendants' negligence and deliberate indifference to his serious medical needs to his death.

81. As a direct and proximate result of the Defendants' negligence and deliberate indifference in treating Mr. Leslie's serious medical condition, Mr. Leslie suffered loss of life. This also deprived him of future enjoyment of life and income.

82. Plaintiff is entitled to recover punitive damages from the Defendants for their intentional, willful, and malicious acts and/or omissions which constituted gross negligence, recklessness, and deliberate indifference to Mr. Leslie's medical needs in violation of his civil rights pursuant to 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

**WHEREFORE**, for the foregoing reasons, Plaintiff requests that this Court after a trial by jury enter Judgment against Defendants for compensatory damages and exemplary or punitive damages proven at trial; for reasonable attorney fees, costs, and expenses incurred herein as provide by 42 U.S.C. § 1983; and for such further legal and equitable relief as the Court may deem just and proper.

Dated: April 23, 2026

Respectfully submitted by,

/s/ Charles C. Eblen

Charles C. Eblen, #55166
Sarah E. Jones, #71957
Brenna L. Kingyon, #785597
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, Missouri 64108
Telephone: 816.474.6550
Facsimile: 816.421.5547
ceblen@shb.com
sejones@shb.com
bkingyon@shb.com

*Attorneys for Lisa Leslie*